## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | | |
|---|---|---|
| **HOPE M. DAMATA** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 6:11-cv-00019** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner,** | ) | **By: Hon. Robert S. Ballou** |
| **Social Security Administration,** | ) | **United States Magistrate Judge** |
| | ) | |
| **Defendant.** | ) | |

### REPORT AND RECOMMENDATION

Plaintiff Hope Marie Damata, ("Damata"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not disabled and therefore not eligible for supplemental security income, ("SSI"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 1614(a)(3)(A); 1381-1383f.  Specifically, Damata alleges the Commissioner improperly evaluated her pain complaints and improperly evaluated her credibility.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B).  The parties have waived oral argument and submitted the case to the court for consideration on the briefs.  The case is ripe for decision.  I have carefully reviewed the administrative record, the legal memoranda, and the applicable law.  I conclude that substantial evidence supports the Commissioner's decision and that the ALJ properly assessed Damata's pain complaints and creditability.  Accordingly, I **RECOMMEND DENYING** Damata's Motion for Summary Judgment (Dkt. No. 16), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 18).

Case 6:11-cv-00019-NKM-RSB   Document 20   Filed 12/27/12   Page 1 of 12   Pageid#: 638

# I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff bears the burden of proving that she suffers under a "disability" as that term is interpreted under the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to her past relevant work; and if not, (5) whether she can perform other work.  Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

### Social and Vocational History

Damata was born February 6, 1985.  (R. 99, 103.)  She completed high school and was enrolled in special education classes, graduating with a special diploma.  (R. 22.)  Dr. Sandra Wells-Brown, a vocational expert, testified before the ALJ that Damata has no relevant past work, (R. 32), although Damata testified that she had a limited employment history as a babysitter, waitress, and dishwasher.  (R. 23.)  Damata described in her July 17, 2008 disability application that her daily activities consisted of playing on the computer, cleaning, (R. 267), cooking, bathing and playing with her children, (R. 268), and watching television.  (R. 271.)

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).

**Claim History**

Damata protectively filed her current claim for SSI on June 18, 2008 (R. 97),[2] and completed the application of her current claim on June 27, 2008. (R. 9, 99.)[3] She claims a disability onset date of May 2, 2006. (R. 9, 103.) The Commissioner denied Damata's disability application initially and upon reconsideration. (R. 37, 38, 44-48, 52-54.) The ALJ held a video hearing on February 10, 2010, at which Damata, represented by counsel, and a vocational expert testified. (R. 9, 19-35.)

The ALJ issued his decision denying Damata's claims on May 28, 2010. (R. 9-18.) In his opinion, the ALJ found that Damata suffered from the severe impairments of "scoliosis, a left knee torn ACL, and a learning disorder." (R. 11.) The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. (R. 12.) The ALJ further found that Damata has an RFC to perform light work with occasional climbing, stooping, kneeling, and crouching, and no crawling. In addition, the ALJ found that Damata is moderately limited in her ability to understand, remember, and carry out detailed instructions and to respond appropriately to changes in the work setting. (R. 14.) The ALJ found that Damata has no past relevant work, but that there are jobs, which exist in significant numbers in the national economy, which Damata can perform, given her age, education, work experience, and RFC. (R. 17.) As such, the ALJ concluded Damata is not disabled. (R. 18.)

On May 9, 2011 the Social Security Administration's Appeals Council ("AC") denied Damata's request for a review of the ALJ's decision, thereby rendering the decision of the ALJ

---

[2] The protective filing date is the date a claimant first contacts the Social Security Administration about filing for benefits; it may be used to establish an earlier application date than the date which a signed application is received. See A Glossary of Social Security Terms, SocialSecuirty.gov (Oct. 3, 2012), http://www.ssa.gov/glossary.htm.
[3] Damata previously filed for SSI; that claim was rejected in October of 2006. (R. 39-43.)

the final decision of the Commissioner.  (R. 1-5.)  On June 22, 2011, Damata filed her complaint in this court seeking judicial review of the ALJ's decision (Dkt. No. 1).

**Medical History**

The ALJ found the medical records in this case supported a finding of a number of severe impairments: "scoliosis; left knee torn ACL; learning disorder."  However, the plaintiff's sole argument in this case deals with the credibility of her subjective pain complaints.  As such, the critical inquiry is the extent to which these severe impairments and the pain Damata experiences affect her ability to engage in substantial gainful activity.[4]

Damata testified before the ALJ that she experiences constant pain her in lower back (R. 24) as well as constant pain in her left knee.  (R. 25, 27.)  Damata reported experiencing pain on July 18, 2006 to Dr. Michael Wolfe at the Carilion Bone and Joint Center in Vinton, Virginia. Damata rated her back pain as a three on a ten point scale and described the pain as an ache of varied duration.  Damata presented to Dr. Wolfe on July 18, 2006 primarily with left knee pain and a pop of her right shoulder blade, "but no real back pain."  (R. 360.)  Dr. Wolfe described a history of scoliosis surgery and diagnosed Damata with left patella chondromalacia and referred her to physical therapy aerobic conditioning, strengthening and spinal extension exercises. Damata saw Dr. Wolfe on August 17, 2006 again with significant left knee pain, but the pain assessment recorded at this visit rated Damata's pain as a zero on a ten point scale; Damata was nevertheless referred for a left knee MRI.  (R. 357-58.)  An MRI on August 22, 2006 showed a bone bruise at the medial tibial plateau, a tear of the medial meniscus at the posterior horn and an attenuated ACL, but without complete disruption.  (R. 355.)  She again reported left knee pain to

---

[4] The medical records indicate that Damata suffered from pain resulting from a finger laceration (R. 516) and sinus pain (559), but Damata does not allege any disability resulting from the temporary pain associated with injuries. Unless related to complaints of chronic pain, such records are also not included in the summary of her medical history.

Dr. Wolfe on August 29, giving a pain assessment six on a ten point scale, describing the duration as constant, and describing the intensity as "sharp and achy." (R. 352.) She described "popping" behind her knee. (R. 353.) Damata was assessed as having "left knee pain with medial meniscal tear" at the Carilion Bone and Joint Center in Vinton on August 30. (R. 354.) Damata was assessed with "anterior knee pain" on September 5 during a physical therapy follow up with Dr. Wolfe. (R. 361.)

Damata's medical records reflect that she was pregnant in 2007 with a delivery date in October 2007. Plaintiff regularly attended her pre-natal visits with only minimal complaints of pain. On July 10, 2007, Damata rated her pain at a seven on a ten point scale in her lower abdomen and hips. (R. 441). The pre-natal records do not show any other pain complaints. (R 420-29, 432-97, 441-46).

Damata fell on July 4, 2007 and saw Dr. Wolfe on July 12. She reported a pain rating of five out of ten in her left knee. (R. 438). The record reflects Damata was not in acute distress or an inordinate amount of pain on July 13. (R. 439). Dr. Wolfe treated Damata conservatively for her torn ACL during the pregnancy. (R. 438, 439). Damata's complaints about her left knee during this time and after the delivery of her baby were inconsistent. On August 23, 2007, Damata rated her pain as zero out of ten. She was wearing a brace and reported to Dr. Wolfe that her symptoms were stable. Dr. Wolfe recorded an excellent knee range of motion with good quadriceps muscle tone. (R. 430). Dr. Wolfe saw Damata on December 11, 2007 for left knee complaints. The records show that Damata rated her pain at one on a ten point scale and described the intensity as achy. She reported that her knee felt like it was grinding and popping out of place even while wearing the brace. Dr. Wolfe referred Damata to an orthopedic surgeon at the University of Virginia for evaluation and possible ACL reconstruction surgery. (R. 415-

16.) No subsequent medical records indicate that Damata ever sought or received any medical treatment at the University of Virginia.

Damata reported to Village Family Physicians on May 2, 2008 complaining of having injured her left knee while stepping out of a pop-up camper. Damata stated that her knee was "very painful" and that she felt a grinding sensation, but was able to walk. The examination by Dr. Janice Luth showed pain in the left knee primarily in the medial aspect over the MCL. Dr. Luth diagnosed Damata with a sprained left MCL. (R. 56263.) Damata reported to her family physician on November 17, 2008 of foot pain which was worsening in the previous weeks, and was aggravated by physical activity. The physical examination was remarkable for only tenderness over the plantar fascia. Damata received prescription Anaprox for this condition. (R. 556-58.)

Damata visited Dr. Rob Feldman for a strained foot on December 3, 2008 in follow up to a twisted ankle she suffered on October 1, 2008. Damata complained of cramps in her legs and feet, as well as back and knee and received a prescription for Indocin to treat her pain. (R. 521.) Damata had the same pain complaints and treatment in her follow-up visit on December 31, 2008. On May 2, 2008, Damata reported to Village Family Physicians that she had injured her left knee when stepping down out of a camper and onto a milk crate. Upon weight bearing, she stated she felt "grinding" and that it was very painful, but that she was able to walk. (R. 562.)

In addition to these medical records, Damata reported in her disability applications that she took medication for pain. In an undated report Damata stated she took Ibuprofen for pain as prescribed by Dr. Michael Wolfe. (R. 254.) Damata reported she took Tylenol for pain in her Disability Appeal Report dated September 22, 2008. (R. 280.) She again reported taking Tylenol as well as a prescription for Indocin from Dr. Feldman, a podiatrist, in an undated

Disability Appeal Report. (R. 294.) However, Damata indicated on her Pain Questionnaires, dated August 29, 2006 and July 17, 2008, that she took no pain medication. (R. 233, 263.) At the hearing before the ALJ Damata testified that she was not currently taking any medications because she does not have insurance. (R. 28.)

A number of state agency physicians have reviewed Damata's medical records. Dr. Richard Surrusco, M.D., gave a primary diagnosis his Physical RFC, dated October 6, 2006, of left knee pain with medial meniscal tear, (R. 378), and further found that the "medical evidence establishes a medically determinable impairment of Left knee Pain with medial meniscal tear." (R. 383.) Dr. E. Hugh Tenison, Ph.D. also found in his Mental RFC, dated October 13, that the "medical evidence establishes a medically determinable impairment of Left Knee Pain." (R. 377.) Dr. Surrusco reiterated his findings on October 12. (R. 399, 404.)

Damata's medical records were again reviewed by state agency physicians in August of 2008. Dr. William Humphries found in his medical consultant report dated August 14, 2008 that Damata's chief medical condition was "low back pain." He noted that Damata had stated that she has had pain in left knee for most of her life and that the "[k]nee pain is there mostly all the time, worse with standing and walking." (R. 459, 473, 478.) His diagnoses included a "ligamentous injury, left knee with ongoing left knee pain." (R. 462, 481.) The Physical RFC of Dr. Richard Surrusco, M.D., dated August 14, 2008, found as follows: "The claimant alleges disability due to back problems due to scoliosis and problems with left knee. She reports discomfort and pain. She alleges that these symptoms result in limitations in standing, walking, lifting, carrying, bending, sitting and climbing. The medical evidence establishes a medically determinable impairment of Scoliosis: ACL tear." (R. 469.) Finally, on May 4, 2009 Dr. Robert

McGuffin repeated the finding of the August 14, 2008 Physical RFC by Dr. Surrusco, finding "no worsening or new allegations."  (R. 544.)

### III.

Damata's sole argument is that the ALJ improperly assessed her pain complaints and creditability.  "While the pain caused by an impairment, independent from any physical limitations imposed by that impairment, may of course render an individual incapable of working, allegations of pain and other subjective symptoms, without more, are insufficient." Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) (citing Myers v. Califano, 611 F.2d 980, 983 (4th Cir.1980)).  The Fourth Circuit has recognized a two-step process to determine whether pain has rendered a claimant disabled by pain.  Hines v. Barnhart, 453 F.3d 559, 564-66 (4th Cir. 2006).  First claimant must establish with objective medical evidence that she suffers from an impairment that could reasonably be expected to cause pain.  Id.; see also Craig, 76 F.3d at 594. "It is only *after* a claimant has met [this] threshold obligation . . . that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated."  Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1)) (emphasis in original).  During this second step, while the claimant may rely entirely on subjective evidence, objective evidence remains relevant.  Hines, 453 F.3d at 565.  In other words, while the absence of objective medical evidence of the intensity, severity, degree, or functional effect of pain is not determinative, id., a claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."  Craig, 76 F.3d at 595 (citing 20 C.F.R. § 416.929(c)(4)).  Furthermore, the claimant cannot make a showing of

9

disability merely by demonstrating that she experiences pain. Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays, 907 F.2d at 1457–58) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), report and recommendation adopted, 3:10CV764, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). The pain must be so severe as to prevent the claimant from performing any substantial gainful activity.

The ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not credible. (R. 16.) Damata asserts that her complaints of pain have been consistent and are well documented in her medical records. Pl.'s Br. 8. This is not the case. The medical records show that Damata's subjective pain assessments have ranged from zero to seven on a ten point scale (R. 415, 430, 441, 444). Damata described her pain as both aching, (R. 348, 352, 360, 415), and sharp. (R. 352.) She described the duration as varying at times, (R. 360), and as constant at times. (R. 352, 438, 441.) There are often gaps of many months in between her medical visits complaining of pain. Such variance in Damata's pain complaints is not indicative of the type chronic debilitating pain associated with an inability to perform any substantial gainful activity. Additionally, Damata reported being able to clean, (R. 267), cook, and bathe and play with her children on a daily basis. (R. 268.) As the ALJ observed, these activities are inconsistent with the limitations one would expect from an individual disabled by pain. (R. 17.)

Furthermore, objective medical evidence supports the ALJ's finding that Damata's statements concerning the intensity, persistence and limiting effects of the pain are not credible. Damata received only conservative treatment to address her complaints of pain. This treatment consisted of medication and some limited physical therapy. Damata received no hands-on

therapy during the relevant period. Damata testified at the hearing before the ALJ she was not on medication for lack of insurance, (R. 28), but she had a medical assistance card at the time she was taking only Ibuprofen. (R. 248, 254.) The physicians who examined Damata never observed her to be in acute distress or discomfort. The ALJ noted that Damata's doctors responded to her knee pain with conservative treatment. (R. 16.) Finally, the ALJ cited the opinions of the examining and reviewing physicians, all of whom agreed that none of Damata's impairments precluded her from performing any substantial gainful activity. (R. 17.) In sum, nothing in the medical records give any objective indication of pain so severe as to render Damata disabled.

As the fact-finder, the ALJ is best able to assess Damata's credibility as to her subjective complaints of pain as considered with the medical record as a whole. Thus, while it is true that the ALJ found that Damata suffers from impairments that could reasonably be expected to cause pain, substantial evidence supports the ALJ's determination as the fact-finder that Damata's pain complaints are only partially credible as neither Damata's subjective pain complaints nor the objective medical evidence in the record support a finding of debilitating pain.

<u>**RECOMMENDED DISPOSITION**</u>

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to

11

note any objections to this Report and Recommendation within fourteen (14) days. Any

adjudication of fact or conclusion of law rendered herein by the undersigned that is not

specifically objected to within the period prescribed by law may become conclusive upon the

parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual

recitations or findings, as well as to the conclusion reached by the undersigned, may be

construed by any reviewing court as a waiver of such objection.

Entered:  December 26, 2012

*/s/ Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge